Good morning. May it please the Court, Jay Shapiro on behalf of Appellants, the mother and daughters of Cameron Boyd. I intend to reserve five minutes for rebuttal. If you keep track of your time, Mr. Shapiro. The District Court erred in two fundamental respects. First, it admitted the testimony of Dr. Karam, who lent an aura of expertise to a suicide-by-cop theory that was both unreliable and inapplicable to the facts of this case. Second, the Court admitted a great deal of character evidence that was enormously and unfairly prejudicial and should have been excluded under Federal Rules of Evidence 703. Mr. Shapiro, since we have so little time, if I could just get right to the nub of this. With respect to the expert, the District Court purported to comply with Daubert, did it not? Correct, Your Honor. And why was what the District Court did not a compliance with Daubert? I don't believe that the District Court probed enough with the expert's purported theories, Your Honor. I believe that the expert's, the supposed basis for the expert's theory showed nothing more than correlation rather than any sort of scientific principles that would suggest that an expert could, after the fact, diagnose a suicide-by-cop theory. Given the fact that the District Court concluded what it did, what is the standard by which we as an appellate court are supposed to review the actions of the District Court? Abuse of discretion. Okay, so we have to find that the District Court abused its discretion. It's a rather low threshold, isn't it? Unfortunately. Okay, so since we're bound by that, what can you, what information from the record can you give us, or what legal doctrines or cases can you provide to us that would help us in our determination? How do we get to where you want us to get on this issue? Even if we find that the suicide-by-cop theory, or rather Dr. Karam's testimony, was reliable under Daubert, I think we still run aground under the relevance portion. And there is also something inherent in the suicide-by-cop theory that I'd like to briefly address that shows why it's so problematic. So suicide-by-cop is at loggerheads with our notions of how evidence should work. It's a theory that is grounded in propensity. In order for it to have any application or any relevance, you have to start from the premise at some point that you're dealing with someone who is suicidal and someone who wants to be shot by the police. And then you have to make the propensity inference that that person acted in accordance with those characteristics later on down the road. Otherwise, the theory has no meaning, and those are the very dangers that Federal Rule of Evidence 404 was enacted to guard against. In this trial, were you trial counsel? No, I wasn't. Okay, your able predecessor, I'm sure, attacked the good doctor at every turn, correct? Vigorously. I'm willing to accept that, Your Honor. And raised each of the issues that you are now so ably bringing up. So the jury got all that information, why this doesn't make any sense, why there's no evidence of Boyd doing this or that or the other. So, again, we get back to the problem that we as appellate judges face, and that is if the district court applied Daubert in deciding whether this man was an expert and your able co-counsel attacked this guy, said this is all ridiculous, it didn't make any sense at all, on what basis then do we overturn the district judge's rulings on abusive discretion? The reason, Your Honor, is because the nature of the evidence that suicide by cops sweeps in is so enormously prejudicial and unfairly prejudicial that we submit it prevented the jury from properly considering whatever evidence was legitimately admitted. The problem with care... Be specific about how it's prejudicial. I mean, everything, all good evidence is prejudicial. That's correct. It's supposed to have an impact. What is it about the impact here that was inappropriate? Because it invited the jury to make improper character propensity inferences, Your Honor, and that sort of evidence is excluded. Well, what's improper about it? Well, what exactly are we talking about here? What evidence biased the jury in an inappropriate fashion? Let's take the testimony of Hogan and Williams since, in my view, that is the most inflammatory. You're moving now away from the doctor to other testimony, right? Well, of course, these things are somewhat part and parcel, Your Honor. But, I mean, we're going away from the Daubert issue to other issues. Is that right? Well, I'm happy to stay... What did Hogan and Wilson testify to? Let's start with that. Hogan and Williams, of course, testify to two attempted kidnappings that occur before Officer Payne joins the pursuit and everything goes to large way where Cameron Boyd was shot and killed. Hogan and Williams testify in unsparing and harrowing detail about their horrible events. But, in our view, this was only relevant if suicide by cop theory is admitted. And in order for this evidence or any of the other evidence that is supposedly relevant to show suicide by cop, in order for that evidence to come in, it has to independently satisfy Rules 404. I understood that the plaintiff's theory was that he was trying to surrender. Is that right? I believe so, yes, Your Honor. So isn't the suicide by cop theory offered to rebut that he was trying to surrender? The argument is he wasn't trying to surrender, he was trying to be shot. That's correct, Your Honor. Why isn't it relevant in that context? I'm not saying that the theory isn't relevant, Your Honor. I'm saying that the theory itself raises these significant dangers because the theory is grounded in the sort of propensity that we do not permit under Federal Rule of Evidence 404. Okay. But given the way this case is being presented, one side says, your side says he's trying to surrender, the other side says he's trying to get himself shot. Why isn't that exactly the kind of discretionary call that the judge needs to be able to make to determine its relevance and let the jury give it as much or as little weight as it sees fit, given the context in which it's offered? Well, Your Honor, of course the judge is required to make these balancing decisions when it comes to evidence. Right. And our argument is that the probative value of suicide by cop as a theory, if you accept it, that is if you accept that indeed it does corroborate Officer Payne's versions of events, that only gets you so far, that tells you that it is relevant. You still have to consider whether the damaging aspects of the testimony, if they are unfairly damaging, substantially outweigh the benefit that the theory or the evidence submitted in support of the theory bring. And the evidence, separate from the theory now, that came into this case raised so much risk of unfair prejudice. I'm happy to go into examples, but I suspect it's obvious. Nearly every piece of evidence here depicted Cameron Boyd as some sort of lunatic, as someone who would provoke the police at any turn. Well, that may be the fact. Yes, that may be the fact, Your Honor. But it invites the improper character inference that if he was that way as a person, something I dispute, but let's accept that he might have been that way as a person, that he acted that way on large way and thus drew the police's fire, that is... Well, when you say he was trying to surrender, they're entitled to say, no, he wasn't, and this is why. That's correct, Your Honor. But even if some of the evidence... Let me back up for a second. If we're going to allow suicide by cop to be used in this way, then we are going to sweep in all of this other evidence that I think we would all probably agree, if it weren't for the suicide by cop theory, if it weren't for this organizing principle, people might look at this disparate evidence, let's take the May 2nd event, and say, we don't see how that could possibly be probative of anything that happened on May 5th. Three days earlier, different police. If that May 2nd event, to take this one example, is probative of anything that happened on May 5th, it's got to be, in my view, through some sort of character inference. That's how you are inviting the jury to see its relevance in this case. And? Because that doesn't tell me anything yet. Well... That explains why it's relevant, but that doesn't explain why it should be excluded. Because character... The problem, of course, with character evidence, Your Honor, is that it is deemed to distract the jury. It raises these dangers of convicting someone, or in this case, deciding against the plaintiffs, because of the person's bad character, or because... Character evidence isn't uniformly excluded. It's excluded when it doesn't relate to the subject matter, where it's not probative. But where it is probative, and in this case, the suicide by cop theory at least connects up, if the jury believes it to make it probative, then you do the balancing. I mean, you've explained it. Yeah, ordinarily, character evidence doesn't come in. You're charged with a DUI. The fact that you ran a red light the week before, it doesn't matter. But if you can make the logical connection, then the judge is forced away. Okay, we've got prejudice over here. We've got probative over here. And why aren't we not in that situation where we wind up deferring to the trial judge's decision? I don't believe it's the case, Your Honor, that when the relevance of a piece of character evidence, when that relevance is propensity, 404B excludes it, isn't it? 404B says very clearly when the piece of evidence is offered to show character and action in conformity with, it is inadmissible. If a piece of character evidence is offered for some different purpose that does not rely on improper character inference, then you're absolutely correct. We would allow it in that situation. And, indeed, defendants make that argument, I think, unsuccessfully, but nonetheless make that argument that the evidence was offered to show plan. Now, I can explain why that is just suicide by cop with the plan label slapped on it, and it has the exact same problems, namely that in order to show that Cameron Boyd had a plan to reach into the car on May 5th, at some point in there, in order for the May 2nd incident, to take one example, to be relevant to show he had a plan to reach into the car three days later, at some point along the way, in order to have any logical connection, you have to assume that you are dealing with someone who is suicidal or has some particular characteristic and acted in accordance with that three days later. That's simply not permitted under Rule 404. And just go ahead.  I guess I'll reserve the rest of my time. Thank you. Good morning. Good morning, Your Honors. Scott Wiener, Office of the San Francisco City Attorney, appearing for the defendants and appellees, City and County of San Francisco, Sergeant Timothy Payne, Sergeant James O'Malley. After a six-week trial, the lion's share of which concerned what happened on Larch Way, voluminous evidence from witnesses and physical evidence about what Cameron Boyd was doing at the time that he was shot, which occupied a significant majority of this six-week trial. The jury took less than three hours and unanimously exonerated these officers and determined that Cameron Boyd's conduct at the time of his death warranted the use of deadly force. On the day of this incident, even ignoring everything else, on the day of this incident, about 45 minutes before he was shot, Cameron Boyd told his mother and his aunt that San Francisco police were trying to kill him. He then, through trickery, escaped from his mother, who was trying to get him out of town, and drove directly into San Francisco, the jurisdiction where he claimed the police were trying to kill him, drove to within a block of a police station, did donuts in the street, pulled the gun out, and tried to point it at the head of a woman and tried to kidnap her a block from a police station, then drove to another police station a block away from that police station, pulled the gun out and tried to kidnap another woman a block from a police station. And then when the police caught on to it and began to pursue him, proceeded to lead them on a dangerous chase in a circle, coming back to within a block or two from where the police chase began instead of escaping. All of that was undisputed. Excuse me? All of that was undisputed, right? It was undisputed. Okay. The part that's disputed is where this suicide by cop thing comes in. So why don't we fast forward. At some point, they try to take him into custody. Exactly. And after he shoots at the police, they corner him, or he stops in large way, and instead of surrendering, he gets out of the car, and then he doesn't comply, he doesn't get down, he doesn't surrender, and instead he sits on the running board of that SUV and repeatedly reaches into that car until he gets shot. And that's according to your evidence. Yes, Your Honor. Their evidence was different on that point. It was disputed, Your Honor. Okay. So now in order to rebut their part of this, you have your cop telling his side of it, they have their witnesses, passersby or neighbors telling their side of it. You bring in a psychiatrist who says what was going on in his head. Your Honor, what we showed, and I think the court was correct, that their case was that his plan, his intent, his motivation was to surrender, and that we rebutted that with 404B evidence that his plan and his intent was to get shot. And we did that both independently of the expert testimony by showing what was going on and what steps he had taken as part of that plan to get himself shot by the police. And we then put on expert testimony that explained to the jury that this is a known phenomenon. This is something that has been subjected to the scientific method. It's peer-reviewed. It is a well-established, decades-old theory that has significant literature surrounding it, peer-reviewed literature, that this is valid science. They can call it junk science until the cows come home, but that doesn't defeat the undisputed evidence provided by Dr. Curram that this is a valid scientific field. Is there any Ninth Circuit case that has put its imprimatur on the suicide by cop theory? It has not come up in the Ninth Circuit. It's come up in a series of other cases throughout the country that we've cited, and it's not been rejected. And, in fact, the Seventh Circuit allowed it in a case that's been- Have other circuits rejected it? No, Your Honor. The Seventh Circuit had accepted it and held that you didn't get to put in as much as you want, but that suicide by cop was valid. I want to focus on one piece of evidence I was a little troubled by, and that was the rap music. My understanding from the record is that this was put in because it talked about the- Theoretically, it reflected his feelings toward the police, but the judge didn't exclude portions of the rap music lyrics that had nothing to do with police officers. So what role, if any, do you think that had? What prejudice did that have? I think that it had minimal prejudice, and I can address a couple points here, Your Honor. First of all, in terms of the police killing aspect of the lyrics, I remember the lyrics were found along with a copy of the Chronicle with a photo of the funeral of Officer Isaac Espinosa, who had recently been murdered. And that does relate to suicide by police. Dr. Curran testified that a known factor relating to why someone would choose suicide by police as opposed to another form of suicide is hatred of the police. And so this was two weeks before his death, and so it related to that. The problem, though, even if you accept that theory, which I have to say on the face gives me some pause. If you really hated the police, why give them the satisfaction of letting them kill you? The problem is that it admits evidence that this is a bad guy. Look at this filth that he writes. Look at the horrible things he does to other people. And the concern here is that the improper or undue prejudice comes from painting Boyd as being a crazy man, yes, but a crazy man who does bad things, and we're all better off with him dead anyway. And that part's not supposed to come in. How do you justify the balance here of letting in, in particular, the rap lyrics is probably the most extreme example, but stuff that just tries to characterize Boyd as being an evil person? Well, it didn't try to characterize Cameron Boyd as being an evil person. It had to do with what his plan was and why he was doing what he was doing, and that he was not trying to surrender and that he was trying to induce the police to kill him. And the rap lyrics, to be very clear about its place in this trial, was a very small piece of this, and I think counsel just stated that the most prejudicial pieces of evidence in terms of disputed evidence were the Hogan and Williams testimony. You know, with the Hogan, end of the Hogan incident was six minutes before he was shot in terms of the link between everything and this being one incident. So I think that even if the court were to conclude that there was an error with the rap lyrics, that it was so minor in the big scheme of things in this case in terms of the mountain of evidence of what happened in Larch Way and the other evidence that was admitted that it would not impact anything. In terms of, and it did, it was tied in to the 404B evidence and the plan. And Dr. Carmichael. How exactly does it show a plan or an intent or a motive to get yourself killed to behave in that fashion? In terms of the rap lyrics? I'll accept the rap lyrics as maybe as an outlier. Let's go to the core. Let's go to the evidence of what he was doing a short time before. How does that show an intent to get yourself shot by the police? Sure. He drove into the jurisdiction where he had just announced that the police were trying to kill him. He kept doing everything in his power, with both attempted kidnappings, to bring police attention to himself and to make sure that they knew that he had a gun because he kept brandishing it and pointing it at people near police stations, doing donuts in the street near a police station. And then instead of trying to get away from the police, circling around and coming back to exactly or almost exactly where he had started. So I think that if you look, this was a plan. And it could be cross-examined, and the plaintiffs could argue that it could be explained by other things. But when you look at the totality of everything this guy was doing on the day of, and particularly in the three days before in Oakland, this was a classic evidence of someone with a death wish, someone who was trying to bring himself to the attention of police, who was trying to let the police know that he had the capacity to use lethal force. That's why he shot at them twice during the chase. Your opposing counsel suggests that this suicide by cop testimony was the linchpin of your case. It sounds like your position is that even if that testimony had not been introduced, that there's enough evidence to be able to hang the same theory together without. Absolutely, Your Honor. As I indicated at the beginning, if you look at the record in this case, contrary to their opening brief, which suggested that this dominated the trial, this was a small part. And I can say that because I actually handled, my colleague, Mr. Lowe, who has handled most of what happened on Larch Way, I handled the 404B stuff. And there were times where for weeks at a time I sat there and didn't have any witnesses because Larch Way dominated this trial. And we explained in our brief that even though there was conflicting evidence on a lot of these issues, the evidence we think was so strong that he was reaching at the time that he was shot in terms of the credible witness testimony, including the testimony of Joe Campos, who had the best view of anyone in this case. He was a couple stories above with a bird's-eye view down on Cameron Boyd, and he corroborated every single aspect, just about, of what the officers said. And even though the plaintiff, Ms. Boyd, tried to intimidate him not to testify, he came forward to testify, and he provided complete corroboration for what these officers said. We also provided some description of the physical evidence, including the high-velocity blood spatter that was on the floorboard of that SUV that proved that his hand was inside of that SUV at the time that he was shot, that he was not standing there surrendering and just executed, that the witness who said that, that was just fabrication. And I think that this jury was confronted with such a mountain of evidence that he was reaching. And this so dominated the trial. What happened at the time that he was shot, that's what this case is about, and that's what this jury understandably focused on. It sort of makes us wonder, then, why you would call this psychiatrist and offer this kind of cutting-edge sort of theory. We felt that we wanted to explain why he was doing what otherwise would seem to be bizarre and inexplicable behavior. If we did at this trial, if this trial proceeded the way that the plaintiffs understandably wanted it to proceed, and we would have had just a little snapshot of what happened at the moment that he was killed, this jury would be scratching its head. Why would this guy, who had these two beautiful little daughters, who had a family that came in and said what a wonderful guy he is, what a great son he was, why would he not surrender? Why would he be doing these weird things that the officers say he was doing? And we would have been in the terrible position of having to say he was acting bizarrely and inexplicably, but you should just believe us. You should believe us. It sounds like this is a little more important than you just described it. Well, Your Honor, I think that the physical and witness testimony were very much on our side, but it would have been a confusing thing to the jury. And as any good trial lawyer will say, if you have five good things that you can rely on, even though you might only need to rely on one thing because it's so powerful, you're going to want to put all five in. I do want to address one item about the rap lyrics that Your Honor asked about in terms of whether the redaction, because it talked about killing police officers, but there were other lyrics as well. They moved to exclude it, but they never moved to only allow in the one or two lines relating to the killing of police. So they moved to exclude the tape altogether? They moved to exclude the rap lyrics themselves altogether. Then after it was excluded, they didn't come back or as a backup argument say at a minimum you should redact everything except for these three or four lines. And so I think that they've waived any argument about the redaction. And I also just want to really also emphasize, and we talked about this in our brief, that with the exception of the rap lyrics, everything else came in on other grounds and would have come in even without suicide by cop. It's important to remember that they disputed absolutely everything in this trial. They disputed he had a gun. How would the Oakland episode a few days before come in? It came in on several grounds. First, it came in because they argued at trial that the reason he didn't get down to the ground and the reason that if he did put his hands into the SUV, he was just trying to get down because he can't surrender and get down in a normal manner because of his prosthetic legs. In the Oakland incident, when the chase ended, he got out of the car and immediately went down on the ground on his own without any help from anyone. So they disputed that he was able to get down and that that's why he was doing the weird things he was doing. And the Oakland incident directly corroborated what the officers were saying, that he should have gotten down. All you'd need to do is say, well, he was stopped in Oakland a few days before and he was able to get down. All the other stuff involving that episode that made him look like he was nuts, that seems to be linked only by the suicide by cop theory. And by 404B generally, even independent of suicide by police, because it showed this plan just three days before what he was doing. But it also came in because there was a wound on his head, which they argued was a graze wound. And why this is important is that there was blood on the floorboard, which is an important issue in the case that we argued was high-velocity blood spatter, which they disputed, and got there because his hand was in the car when he was shot. They argued that during the chase when he was shot at, when he was going 60 miles an hour the wrong way down a one-way street after shooting at the police, that that shot caused a graze wound and that that is what caused the blood to be on the floorboard. This was an important issue in the case, and we had to refute that. In the Oakland incident, we relied on that, and that during that arrest, during which he did struggle and was on the ground, that he received injuries during that incident. And the autopsy showed that he had various injuries that preexisted this incident because they were a few days old. And so our argument was that the wound from his head came from the Oakland incident, and it rebutted their argument about the graze wound, which was a key issue in the case in terms of where that blood came from. Thank you very much. Thank you. Mr. Shapiro, you get the last word. Gosh, where to begin? Opposing counsel says the jury would be scratching its head if we only gave them this snapshot of what happened. Exactly. That's what Graham v. Conner requires. You're not supposed to put the jury in a position of greater perspective than the officer at the scene of the crime had. If you do so, and that's what happened here, you give the jury so much information to work with that there's risk of confusion, overemphasizing past conduct by, in this case, Cameron Boyd. So, yes, it makes their case more difficult, but that's how these cases are supposed to be tried. Opposing counsel's ---- I don't understand that. Their argument isn't that the cop on the scene, the policeman that fired what was ultimately used as a deadly force, understood that it was suicide by cop. He was seeing a situation unfold and react to that. And the expert testimony is offered up to explain why a person would behave in a manner you would not otherwise expect. That's correct, Your Honor. What's wrong with that? The danger is that it gives the jury so much information that the jury, I believe, is ---- it's difficult to withstand the temptation to make inferences or to convict on issues that the officer didn't know, and that even if these issues are relevant to, again, to support the claim that he was surrendering, they also bring in, again, this sort of prejudicial risk that I think overwhelms whatever the substantial or rather whatever the probative value would be. Also, to touch on their plan argument for one last time, they say that independent of suicide by cop, these discrete events show that there was a plan. The justification for admitting evidence to show plan is that it involves no inference from the person's character. But if you had no idea that a suicide by cop theory existed, and I said that these disparate events showed plan, you'd think I'd have rocks in my head. The justification for admitting discrete acts to show plan is plausible when you have some external evidence that says there is a plan going on or the individual acts have an obvious inference about them that suggests there is a plan going on. And if we didn't know about suicide by cop, I don't believe there's any way that we would infer that these incidents had anything to do with what was going on on May 5th. One last point about the Seventh Circuit. Opposing counsel says that the Seventh Circuit has accepted suicide by cop. In Palmquist, it is true that the Seventh Circuit says that the district court had admitted expert testimony on suicide by cop. But, of course, as you know in that case, the district court also excluded all of this incredibly probative evidence that would have supported that. And at the very least, we would have asked for the same approach here. That is, even if you're going to allow Dr. Karam to testify that in her professional opinion Mr. Boyd was committing suicide by cop, you should have excluded all of this evidence that was offered in support of it, not because it may have no relevance, but because the probative value of that evidence would be overwhelmed by the risk of unfair prejudice. Thank you very much, Mr. Shapiro. Thank you. Thank you very much as well. Mr. Shapiro, you were good enough to take this case appointment on a pro bono basis. We want to thank you very much for doing that and for your able representation of the plaintiffs. Also, before we say goodbye, Mr. Shapiro, I wanted you to know that the city attorney's office had arranged, I guess, through the court to have some of its law clerks come to watch, and we've agreed to meet afterwards with the clerks and some clerks from another law firm too, I think, isn't there? Anyway, I just wanted to assure you we're not going to be talking about the case, but in any event, you're welcome to stick around if you'd like and hear our sagacious comments at the end. They'll give you some idea how to make something sound. You won't get that from our meeting. Anyway, thank you again for taking the case, and we'll stand at recess.
judges: Silverman, Clifton, Smith M.